## GAFFNEY v. PEELER.

1. Where all the issues in a law case are referred to a referee to hear and determine, and to report the same, the right to file exceptions thereto being specially reserved, the findings of law and fact by the referee are open to review, upon proper exceptions, in the Circuit Court.

2. A finding of fact by a referee, based upon incompetent testimony, is error of law.

3. Minutes of a stockholders' meeting of a corporation under whom plaintiff claims the land in dispute, and also declarations of a former owner, are inadmissible in support of plaintiff's title.

4. A married woman's estate of inheritance, prior to 1868, could be conveyed only in the mode prescribed by the act of 1795.

5. Since the statute of distributions of 1791, there has been in this state no tenancy by the curtesy in fee simple estates.

6. P., having an interest in land as an heir of his father, sold it to his mother, and then conveyed the entire fee to K., with covenants of general warranty : *Held*, that P. and those claiming under him were estopped from asserting against K. an interest in the land subsequently acquired by P. as an heir of his mother, or otherwise.

7. This court has no power to review questions of fact passed upon by the Circuit judge in a law case.

8. Matters not presented to nor passed upon by the Circuit judge, nor made a ground of exception, not considered.

9. Action was brought against several defendants for the recovery of real property, plaintiff demanding judgment for the land described, or if entitled to only an undivided interest therein, then for division or sale ; plaintiff being found entitled to the interest of only one of the defendants, the judgment of the Circuit Court dismissing the complaint was reversed and a new trial granted.

Before HUDSON, J., York, June, 1883.

This was an action by W. W. Gaffney against Daniel Peeler and others for the recovery of a tract of land, commenced in 1882. The defendants are the heirs-at-law of Daniel Peeler, sr. The plaintiff claimed under this same Daniel Peeler, sr., under the chain of titles stated in the opinion of this court. The releases to the widow were in the shape of bonds, whereby the obligor bound himself, on payment of the purchase money, to execute good titles to the obligee for his or his wife's share, or if partition should be ordered, then to execute a power to the obligee to receive the share awarded to the obligor. The first of these bonds bears date October 26, 1840, and was executed by Moses M. Dunn, husband of one of the distributees, to Anthony Peeler, and by intermediate bonds of others, and finally by bond of Anthony Peeler to Levicey Peeler, the widow, dated November 6, 1846, all of the shares were transferred, or attempted to be transferred, to Levicey Peeler, except that of Mrs. Moss, a widowed daughter, who resided on the place. But the married

daughters signed none of these bonds; they were executed by their husbands, two of whom have survived their wives. On March 14, 1863, Levicey Moss, widow, by a like bond, transferred her share to her mother.

There was no evidence of any deed from Gist to Daniel Peeler, jr., but plaintiffs introduced in evidence a minute of a meeting of the stockholders of the King's Mountain Iron Company, proved to be in the handwriting of R. V. Gist, approving a purchase of the property from Daniel Peeler, jr. A declaration of Gist that he had purchased the Peeler land for the Iron Company was also proved.

In 1842 all the children of Daniel Peeler, sr., had moved to Georgia, except Levicey Moss and Daniel Peeler, who remained with their mother on the place. This situation continued until March, 1863, when Levicey Peeler made her deed to Gist, about which time the land was abandoned by the Peeler family. In 1879 the defendants, heirs of Daniel Peeler, sr., and of his wife Levicey (who died in 1865), entered upon the land and held it adversely.

The Circuit judgment was as follows:

The plaintiff brings this action against the defendants to recover possession of a tract of 695 acres of land, which it is alleged they wrongfully withhold from him, and of which he is seized in fee. The defendants deny the title of the plaintiff, and lay claim to the said land as heirs-at-law of Daniel Peeler, sr., deceased, and of his deceased widow, Levicey Peeler. By the pleadings the action is one involving the title to real estate. No equitable feature is engrafted upon the action, neither in the complaint nor in the answer.

The parties, waiving trial by jury, and desiring a trial by the court, procured the issues of law and of fact to be referred to a special referee. Accordingly references were held and much testimony was taken, and this testimony, with the findings of fact and conclusions of law, and the exceptions thereto, bring the case for hearing before me. To the testimony and report of the referee, reference must be had for the detail of the facts, a statement of which I cannot incorporate into this judgment because they are so voluminous.

In such an action it devolves upon the plaintiff to shew perfect title .in himself to the disputed land, in order to recover of the defendants who are in possession claiming title. The plaintiff must rely upon the strength of his own title, and not upon the weakness of that of the defendants. It is in order therefore first to examine the title of the plaintiff as set up and ascertain its strength. If he has shewn a *prima facie* title, it will be in order then to examine the title established by the defence, so as to determine whether or not it be paramount to that of the plaintiff.

Both parties claim under Daniel Peeler, sr., deceased, to whom the land was granted by the state in July, A. D. 1819, and who died seized and possessed thereof about 1830. The following is the plaintiff's abstract of title which he claims has been sufficiently established:

1. Deed to the *locus in quo* bearing date May 6th, 1881, sold by virtue of an order of the Court of Common Pleas at the suit of T. J. Bell, who held it as agent of the creditors of the King's Mountain Iron Company.

2. Deed to the *locus in quo* by the sheriff of York to T. J. Bell, bearing date May 18th, 1880, the same having been levied on and sold by said sheriff at the suit of the said execution creditors of the King's Mountain Iron Company in 1869 and deed made in 1880, and possession taken by Bell in 1869.

3. Deed of Daniel Peeler, jr., bearing date June 12th, 1863, conveying the land to the King's Mountain Iron Company.

4. Alleged deed of Richard V. Gist shortly prior to the last named deed of June 12th, 1863, conveying said land to Daniel Peeler.

5. Deed March 14, 1863, of Levicey Peeler, conveying said land to R. V. Gist.

6. Deeds of the surviving children of Daniel Peeler, sr., conveying their respective shares of said land to their mother, Levicey Peeler, evidenced by bonds for title given at different days and times between 1840 and 1863, but mostly prior to 1846.

7. Death of Daniel Peeler, deceased, about 1830, seized in fee of this land, which was granted to him by the state July 19th, 1819, leaving him surviving his widow, Levicey Peeler, and ten children.

This abstract of plaintiff's alleged title I have formulated from the testimony, and it is very clear that if the evidence establishes it, he must recover of the defendants. The plaintiff has, by proper and sufficient proof, established the first, second, and third links in his chain of title. The deeds of conveyance are in evidence, and no question has been made as to their execution and delivery. By this proof the plaintiff has traced his title through successive owners of this land back to June 12th, 1863.

But the fourth link is missing. No deed from R. V. Gist to Daniel Peeler, jr., has been produced. There is no evidence that such a deed was ever made. Neither the original nor an office copy can be found, nor has any witness been produced to prove that such a paper ever existed. Betwixt the time when Levicey Peeler, the widow, conveyed to R. V. Gist, and the time when Daniel Peeler conveyed to the King's Mountain Iron Company, but a few months intervened, to wit, from March 16, 1863, to June 12, 1863, but how Daniel Peeler got title does not appear. To make it appear that such a transfer of title was made, the plaintiff introduced before the referee declarations of Gist, who is living in the state, and the minutes of the King's Mountain Iron Company, to the effect that Gist had bought the land from Levicey Peeler. But none of these declarations are to the effect that Gist conveyed to Daniel Peeler, jr., but are statements of other facts, from which we are asked to conjecture or infer that he did so.

All these declarations, even if admissible, when duly weighed, are insufficient to support the inference that Gist sold and conveyed the land to Peeler. But this loose hearsay testimony is clearly inadmissible in behalf of plaintiff's title. He claims under the King's Mountain Iron Company, and also under Gist, and the declarations of these persons in favor of their own title are inadmissible in behalf of the plaintiff. A witness for the defendants stated on his examination that while in Georgia he saw a paper purporting to be a bond for titles from Gist to Peeler in the possession of Peeler, but it had neither date nor witness. This does not cure the want of proof by plaintiff, and, intrinsically, is worth little as testimony. I conclude that this fourth

link in the plaintiff's chain is missing, and that it is unsupplied by proof.

It is suggested that we might conclude that the title of Gist was the title of the company, and thus make the connection. But such is not the plaintiff's allegation in his complaint, nor is there any legitimate testimony going to sustain such a conclusion. In fact, the circumstances negative this theory, because, if such were true, why would the company have taken title from Daniel Peeler, under whom they held and claimed? Why not take from Gist? If Gist bought for the company, there appears no reason at all why they should not have taken his title, instead of title from another. This theory has no evidence to support it, and is negatived by the circumstances. Now, it seems that T. J. Bell held the title of the King's Mountain Company for the period of ten years, and this might save the plaintiff's case, provided he could go beyond 1863 and connect himself with other owners of the land, the united possession of whom would cover a period of more than twenty years, so as to presume a grant from the state.

If he were making out his title before a jury, and proved title in Bell and his possession of the land for ten years or more, still he would be nonsuited, unless he could connect Bell with preceding owners and occupants of the land, whose period of ownership would form a period of twenty years or more, from the plaintiff downward, in which the land had been owned connectedly and successively by citizens of the state under whom plaintiff claims. Subjected to this fundamental rule as to the mode of raising the presumption of a grant, the plaintiff would be nonsuited, because he stops short in his proof at June 12, 1863, which leaves him within the period of twenty years, and deprives him of the benefit of the presumption of a grant by the state.

But so far as Bell's title and possession are concerned, the plaintiff can derive little benefit therefrom, because that possession was interrupted, before the lapse of ten years, by the defendants, who, as heirs at law of Daniel Peeler, sr., and of their deceased mother, the 'widow, reëntered upon the land and ousted Bell, and still hold against the plaintiff. At the sale at which the plaintiff purchased this land, the defendants caused full and explicit notice, in writing, to be published, declaring their posses-

sion and title to this land. The plaintiff purchased with his eyes open, and, it is said, bought at a nominal price. He accepted the gage thrown down to him, and coming into this court to assert his title to the territory which he knew to be possessed and claimed by the defendants, he has failed in his venture under the most liberal construction of the rules of evidence and principles of law.

Now the plaintiff holds the title of Daniel Peeler, jr., to this tract of land. He is one of the heirs at law of Daniel Peeler, sr., to whom the land was granted by the state in 1819, and were it not that Daniel Peeler, jr., parted with his interest and estate as heir to his father long ago, the plaintiff would be entitled to recover that part, which is the one-fifteenth of the whole. But as far back as December 15th, 1842, he sold his interest to his mother, and her title thereto became absolute and perfect before she, in March, 1863, sold and conveyed to Gist.

I conclude, therefore, as a matter of fact, that plaintiff has failed to show title to the land in dispute, and hence cannot recover possession thereof from the defendants. All the findings of fact and conclusions of law of the referee at variance with the facts herein found and the principles of law herein announced are overruled.

I deem it unnecessary to examine in detail the merits of the defendants' title, as they are allowed to stand upon their possession of the land until ousted by paramount title. It would be very tedious to follow the learned referee in his various findings of fact and conclusions of law bearing upon the various and frequent transfers of title by the heirs at law of Daniel Peeler, sr., the one to the other. It is enough to say that I cannot agree with him in his views of the effect of the attempts of the husbands of Peeler's daughters to convey or to sell their wives' shares in this land. My own opinion is that Levicey Peeler, the widow, under a proper construction of the law and findings of fact, did get good and sufficient title to shares of such of the children as, being *sui juris*, sold to her; the lapse of time and possession curing the absence of proof of deeds. She also got title to the husbands' shares of their wives' parts in each case where the husband sold and survived the wife; but in cases where the wife

survived the husband, his previous attempt to convey conferred no estate, but the whole survived to the wife.

It is a mistake also in the referee to hold that in South Carolina, prior to 1868, a husband surviving the wife had an estate in curtesy to her separate real estate. The act of 1791, in my opinion, fixed his right as one of her heirs, and abolished the estate by curtesy in her fee simple estate by necessary implication. The provisions of that act are totally inconsistent with the estate of curtesy in the husband.

Should the plaintiff hereafter be able to put the defendants to the exact proof of title, it will be time enough for the court to adjudge in detail which of the defendants have, and which have not, title superior to that of the plaintiff. Having adjudged that he has not proved title, we are called on to go no further.

It is therefore ordered, adjudged, and decreed that the complaint be dismissed, and that the defendants have execution for their costs.

From this decree the plaintiff appealed upon the following exceptions:

It is respectfully submitted that his honor the presiding judge erred:

1. In overruling the finding of fact by the referee that R. V. Gist had conveyed the land in dispute to Daniel Peeler, jr., since, being a case at law, and all the issues having been referred to the referee: (*a.*) The said finding was not without evidence to sustain it. (*b.*) It was in accordance with the clear preponderance of the evidence. (*c.*) The evidence in support of the finding was conclusive, and there was no evidence to rebut it.

2. In holding that the alleged conveyance from Gist to Peeler was unsupported by the proof.

3. In excluding from the evidence the minutes of a meeting of the stockholders of the King's Mountain Iron Company, at which Gist, the agent of the company, and a stockholder, was present, and reported the purchase for the said company of the land in dispute from Daniel Peeler, offered to show: (*a.*) That Gist had conveyed to Peeler. (*b.*) And, generally, that Gist's title was in the company.

4. In excluding from the evidence the declarations of the said Gist in favor of the said company's title, made whilst its agent.

5. In holding that Levicey Peeler, when she conveyed to Gist, was not seized of the several interests of the married daughters and their husbands in the land in dispute.

6. In holding that the plaintiff took nothing by the deed of Daniel Peeler, jr., to the King's Mountain Iron Company, because he had previously conveyed his interest away, and that he can retain the possession, in the face of his own deed, against the plaintiff.

7. In adjudging that the plaintiff's complaint should be dismissed.

8. In holding that plaintiff, in his proof of a chain of successive possessions in preceding owners for twenty years, stopped short at June 12, 1863, the testimony being that Levicey Peeler, who sold to R. V. Gist, March 14, 1863, continued to hold until January 1, 1864, when she surrendered the possession to the King's Mountain Iron Company.

9. In not holding that the possession of the King's Mountain Iron Company was not broken by T. J. Bell, when he entered in 1869, but that he must be taken to have held under and for the said company until he accepted the sheriff's title, May 18, 1880, and because of such acceptance.

10. In not adjudging that the plaintiff is seized of all the right, title, and claim that the said Gist ever held in the premises, and that he is entitled to recover the same, with damages for the withholding, according to the proof.

11. In not adjudging that Daniel Peeler, jr., and the other defendants who claim to hold as the heirs at law of Daniel Peeler, sr., and Levicey Peeler, are estopped from denying transfer of the said Daniel Peeler, jr.,'s title, as one of such heirs at law, to the plaintiff or his grantors.

12. In not adjudging that the plaintiff was entitled, as against the said Daniel Peeler, jr., and the defendants claiming as aforesaid, to be let into possession of the premises to the extent of the interest of the said Daniel Peeler, as an heir at law of his father and mother, and to damages for the withholding, according to the proof.

13. In not recommitting the report to the referee for his findings of fact from the testimony not adjudged to be incompetent.

*Messrs. C. E. Spencer* and *J. H. Rion* for appellant.

*Mr. James F. Hart*, contra.

April 2d, 1884.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiff in this action seeks to recover possession of a certain tract of land in York county, "And that the title should be adjudged in the plaintiff in fee simple, and in the event that judgment in his favor should be for only an undivided interest in the same, the plaintiff will demand judgment that the premises aforesaid be divided between plaintiff and the parties in interest according to their respective shares, or if division in kind be impracticable, that the said premises be sold, and the proceeds divided as aforesaid."   In his complaint he sets out his chain of title as follows:

1. A grant to Daniel Peeler, sr., dated July 19th, 1819.

2. Death of Daniel Peeler, sr., intestate, about 1830, leaving as his heirs at law his widow, Levicey, and ten children.

3. Releases from the children to the widow.

4. Deed from widow to R. V. Gist, dated March 14th, 1863.

5. Deed from Gist to Daniel Peeler, jr., date unknown.

6. Deed from Daniel Peeler, jr., to the King's Mountain Iron Company, dated June 12th, 1863.

7. Deed from sheriff of the interest of said company sold under execution to T. J. Bell.

8. Deed from clerk of court to plaintiff, dated May 6th, 1881, in pursuance of a sale made by him under proper proceedings for that purpose.

In the second count of the complaint, as it is called, the plaintiff simply sets up a claim that he is seized in fee of the premises in dispute, without specifying the sources of his title; and in the third count he claims that he was lawfully in possession of the premises in question, and that defendants unlawfully entered upon and disseized the plaintiff and forcibly keep him out of possession. The answers contained a general denial of the plaintiff's

title, and no further statement of what they contain need be made as the question turns upon the validity of plaintiff's title.

A trial by jury was waived, and an order was granted referring it to a referee, "to hear, determine, and report upon all the issues of law and fact raised by the said pleadings, with the right reserved to either party to file exceptions to said report, and to have the same heard in this court; it being understood that neither party waives the right to a subsequent trial by jury of the issues raised, whether Thomas J. Bell, Esq., through whom the plaintiff claims, acquired title to the property in dispute by possession subsequently to the execution sale, at which it is alleged he purchased the same."

Accordingly, the case came before the Circuit judge upon the report of the referee, with exceptions thereto filed both by plaintiff and defendants, and he held that the plaintiff had failed to establish the *fourth* link in the chain of title, as the Circuit judge stated the chain, but the fifth link in the chain of title as herein above stated; and that as plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of his adversaries', who may rely simply upon their possession, he rendered judgment dismissing the complaint. The judge, however, does go on to express his dissent from certain legal propositions announced by the referee, in reference to the effect of the releases of such of the children of Levicey Peeler as were married women at the time—the papers claimed to operate as releases being signed by the husbands and not by their wives—and in reference to the right of the husbands to estates of tenancy by the curtesy, which are made the basis of one of the exceptions.

The plaintiff appeals upon numerous grounds, which are fully set out in the "Case," and need not be repeated here. The first and most material question made is, whether the judge erred in holding that the plaintiff had failed to establish any conveyance from Gist to Daniel Peeler, jr., the fifth link in the plaintiff's chain of title as we have stated it. The referee having found that such a conveyance was proved by the evidence before him, it is contended that as this is a case at law, the Circuit judge had no right to overrule this finding of fact, but was bound to accept it as a verdict of a jury. It will be observed, however, that the

terms of the order of reference plainly show that such was not the intention of the parties, but that all the findings of the referee, both of law and fact, were open to review, and under such an order of reference, as is intimated in *Ross* v. *Linder*, 18 *S. C.*, 605, the parties would be estopped from making the question.

But in addition to this, where, as in this case, the finding of fact by the referee is based upon incompetent testimony, there surely cannot be a question as to the right of the judge to reverse such finding upon the ground of error of law.　Here the referee based his finding of fact upon certain minutes made upon the books of the King's Mountain Iron Company, of which Gist was agent, and certain declarations made by Gist, which we think were clearly incompetent, amounting to nothing more than declarations of parties under whom the plaintiff claims, in favor of their own title.　The question whether Gist had conveyed to Peeler was a question of fact, and the decision of the Circuit judge is conclusive.　The point made in the argument, though not appearing very distinctly in the exceptions, that Gist, when he bought from Mrs. Peeler, though he took title in his own name, really bought for the company, and that the purchase money was paid out of the company's funds, rests upon the declaration of Gist and the minutes of the company, which, as we have seen, were incompetent testimony, and for this reason cannot be sustained.

Next, as to the effect of the papers claimed to operate as releases to Levicey Peeler of the interests of her several children. So far as the rights of those of them who were married women are concerned, we agree with the Circuit judge in the view which he has taken.　The only mode by which a married woman, prior to 1868, could dispose of her estate of inheritance in land, is that prescribed by the act of 1795, and unless that mode is strictly pursued, the interest of the wife does not pass.　*McLaurin* v. *Wilson*, 16 *S. C.*, 402.

So, too, we agree with the Circuit judge that the necessary effect of the act of 1791 was to abolish the husband's right to hold as tenant by the curtesy lands of his wife which she held as tenant *in fee simple*.　This question, so far as we are informed, does not seem to have been distinctly decided in any reported

case in this state, though Chancellor Dargan, in *Wright* v. *Herron*, 5 *Rich. Eq.*, at page 446, in speaking of the effect of the act of 1791, says: "Upon the construction of this act it has been held, that the husband is not entitled to his curtesy in fee simple estates," notwithstanding the fact that he does go on to use language which would seem to imply that he was inclined to a different opinion.

It seems to us, however, that the necessary effect of this act was to abolish the husband's estate by the curtesy. The object of the act, as expressed in its title and preamble, was not only to abolish the right of primogeniture, but also to provide for the "equitable distribution of the real estates of intestates," as specially enjoined by art. x. § 5 of the constitution of 1790. Accordingly, in the first section, it declares, amongst other things, "that when any person possessed of, interested in, or entitled unto a real estate in his or her own right, in fee simple, shall die without disposing thereof by will, the same shall be distributed in the following manner," and then proceeds to provide for the various contingencies which may occur, and the mode of distribution in such contingencies, amongst others, as follows: "On the death of any married woman the husband shall be entitled to the same share of her real estate as is herein given to the widow out of the estate of the husband," etc. It will be observed that the language of the act is imperative, that the real estate of an intestate "*shall be distributed*" in the manner prescribed by the act, and therefore any other disposition of it would not be lawful.

It will also be observed that while the act nowhere recognizes the preëxisting estate of curtesy, it does, in section 6, expressly recognize, but does not undertake to create or reëstablish, the preëxisting estate of dower. It will be further noticed that the act gives to the husband, *not* the same interest which a surviving wife would take out of the real estate of her deceased husband, but "the same share of her real estate *as is herein given* to the widow out of the estate of the husband." It would seem to follow, therefore, that while the act of 1791 cannot be regarded as excluding the widow's right of dower, inasmuch as it expressly recognizes such right, it must be construed as excluding the right of curtesy, which is not recognized, and which, if allowed, would

disturb and defeat the mode in which the act declares the estate of an intestate *"shall be distributed."*

Looking to the special features of the act as above pointed out, we are unable to see the force of the view suggested by Chancellor Dargan, above referred to. His language is as follows:· "But as the widow is allowed to elect between her distributive share and her dower, and as the act expressly declares that the husband shall be entitled to the same share in his deceased wife's real estate as it allows to the widow out of the husband's estate, would it not be a just construction to allow the husband his election between his distributive share and his curtesy, and this even in fee simple estates? Is there any case which adjudges this question which refuses him his election?" As we have seen, however, that while the act expressly recognizes the estate of dower, and shows by the plainest implication that the intention was not to abrogate, or in any way interfere with that estate, it does not recognize the estate by the curtesy, and its recognition or allowance would seriously interfere with and practically defeat the scheme of the act. Again, as we have said, the estate of dower is not "herein given," it is not created or provided for by the act, and it only gives to the husband "the *same share* of her real estate as is *herein given* to the widow out of the estate of the husband." There is, therefore, no ground for construing the act as intending to give to a surviving husband an equivalent estate to that of dower, for it expressly provides that his share shall be the same as that provided for the widow by the terms of the act, and the estate of dower is not so provided for.

It is true that there is a case (*Gray* v. *Givens*, 2 *Hill Ch.*, 511) in which the husband was allowed to elect to hold his deceased wife's lands, as tenant by the curtesy, or to take under the statute of distributions, but in that case the question was not raised or discussed. On the contrary, the bill itself prayed that the husband might be required to elect whether he would hold as tenant by the curtesy or take his share under the statute of distributions. The case cannot, therefore, be regarded as any authority upon the question under consideration.

In the case of *Wright* v. *Herron, supra,* the question arose whether a surviving husband was entitled to hold, as tenant by

the curtesy, the lands of which his deceased wife had held in *fee conditional,* and it was in discussing that question that Chancellor Dargan threw out the *obiter dictum,* in reference to estates held *in fee simple,* which has been quoted above. Inasmuch as the act of 1791, in express terms, applies only to estates held in *fee simple,* and could not well apply to an estate held in *fee conditional,* where by the very nature of the estate the succession is limited to a particular class of heirs, it is quite clear that the question in *Wright* v. *Herron* was a totally different one from that which we are called upon to determine. But even the question there presented does not seem to have been by any means free from difficulty, for at the request of two of the chancellors it was referred to the Court of Errors (6 *Rich. Eq.,* 406), and that court being equally divided upon the question, it was referred back to the Court of Equity, which held that the husband was entitled to hold, as tenant by the curtesy, lands of which his deceased wife held an estate in *fee conditional,* and that decision has been subsequently approved in *Withers* v. *Jenkins,* 14 *S. C.,* 597; but from what is said by the chief justice, at page 608, in delivering the opinion of the court, it is very apparent that a different conclusion would have been reached if the estate of the wife had been a fee simple instead of a fee conditional estate.

The next point raised by appellants' sixth, eleventh, and twelfth exceptions is as to the plaintiff's right to recover the interest of Daniel Peeler, jr. It seems that on June 12th, 1863, he conveyed, with general warranty, the premises in dispute to the King's Mountain Iron Company, whose title the plaintiff holds. The effect of this deed, containing a general warranty clause, was to convey to that company, and consequently to the plaintiff, not only whatever interest he then had, but also any that he might thereafter acquire. *Reeder* ads. *Craig,* 3 *McC.,* 412; *Harvin* v. *Hodge, Dud.,* 25; *Starke* v. *Harrison,* 5 *Rich.,* 8. It is true that he had previously sold his interest as heir at law of his father to his mother, but if he subsequently acquired an interest in the land, either as heir at law of his mother, or otherwise, such interest would pass under his deed to the company. It is likewise true that the plaintiff introduced a deed from his mother conveying the land to Gist, but the defendants

contend that Gist abandoned his claim to the land in favor of the heirs at law of Levicey Peeler, of whom Daniel Peeler, jr., was one. Be this, however, as it may, we find Daniel Peeler named as one of the defendants in this action, and his deed to the King's Mountain Company will certainly estop him, as well as any who claim under him as heirs at law or otherwise (it being suggested in the argument that he has died since the commencement of the action), from disputing the title of the plaintiff, who holds the title of said company. Upon this point, therefore, we think the Circuit judge erred, and that the case must go back.

This disposes of all the exceptions except those which raise questions of fact, which we have no power to review.

The point made in the argument, but not in the exceptions, based upon what is called the third count in the complaint, that the plaintiff, without regard to title, is entitled to recover on account of his priority of *possession*, from which he was wrongfully ejected by the defendants, is not properly before us. It does not appear to have been presented to, and certainly was not passed upon by, the Circuit judge, and there is no exception raising the point.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.